## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CHAD ELLIOT JONES,**

    **Plaintiff,**

**v.**                                            **Case No. 8:14-cv-3080-T-30EAJ**

**DANIEL STEVEN PARKER and IRON WORKERS REGIONAL DISTRICT COUNCIL,**

    **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion to Remand (Dkt. 12) and Defendants' Response in Opposition (Dkt. 15). The Court, having considered the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted.

## BACKGROUND

Plaintiff Chad Elliot Jones filed this action in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, alleging purely Florida claims. Specifically, Jones' amended complaint alleges the following claims against Defendants Daniel Steven Parker and Iron Workers Regional District Council: (1) interference with advantageous business relationships

(Count I); (2) defamation (libel per se) (Count II); (3) civil conspiracy (Counts III and IV); and intentional infliction of emotional distress (Count V).[1]

On December 11, 2014, Defendants timely removed the action to this Court based on "complete preemption." On January 9, 2015, Jones filed a motion to remand.

Defendants contend that sections 301 and 303 of the Labor Management Relations Act ("LMRA") completely preempt Jones' Florida claims. The Court disagrees; a close reading of Jones' amended complaint demonstrates that Jones' claims do not require any interpretation or application of the Union's Collective Bargaining Agreement ("CBA"). Moreover, the allegations do not concern "secondary activity."

## **DISCUSSION**

I.   **Section 301 Preemption As Basis For Removal**

   A.   **Relevant Law**

It is axiomatic that federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). They possess only that power authorized by the Constitution and by statute. *See id.* (citing *Willy v. Coastal Corp.,* 503 U.S. 131, 136-137 (1992) and *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986)). These jurisdictional grants are not to be expanded by judicial decree. *See id.* at 377 (citing *American Fire & Casualty Co. v. Finn,* 341 U.S. 6 (1951)). It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests

---

[1] Jones mislabeled his fifth cause of action as Count IV; this claim will be referred to as Count V to avoid confusion.

upon the party asserting jurisdiction. *See id.* (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936)). Removal statutes are narrowly construed; when the defendant and the plaintiff clash about jurisdiction, any uncertainties must be construed in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

In considering whether they possess subject matter jurisdiction over a case or controversy, federal district courts are guided by the well-pleaded complaint rule that provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152 (1908). Pursuant to that rule, a case may be removed based on federal question jurisdiction only when the plaintiff's statement of his own cause of action shows that it is based on federal law. *See Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.,* 182 F.3d 851, 854 (11th Cir.1999) (citing *Mottley*, 211 U.S. at 149). Stated differently, only state-court actions that originally could have been filed in federal court may be removed to federal court. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).

However, one limited exception to this general rule is "when a federal statute wholly displace[s] the state-law cause of action through complete preemption." *Beneficial Nat. Bank*, 539 U.S. at 8. This narrow exception to the well-pleaded complaint rule, otherwise known as the "complete preemption" doctrine, occurs where "Congress [has] so completely preemp[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64 (1987). The theory behind the doctrine is that "the pre-emptive force of a statute is so 'extraordinary'

that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar,* 482 U.S. at 393 (quoting *Metro. Life,* 481 U.S. at 65).

Defendants rely, in part, upon section 301 of the LMRA to support their removal of Jones' state-court action. Section 301 of the LMRA is one of but a few statutes under which the Supreme Court has recognized complete preemption. *See, e.g., Allis-Chaimers Corp. v. Lueck,* 471 U.S. 202, 209-11 (1985). Section 301 of the LMRA provides that "[s]uits for a violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The statute serves to preempt state-law claims for what are in actuality suits for violation of contracts between an employer and a labor organization. *See Caterpillar,* 482 U.S. at 394. In *Allis-Chalmers Corp.,* the Supreme Court held that when resolution of a state-law claim is substantially dependent on an analysis of the terms of a CBA, the claim is preempted and federal labor law applies. *See also Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413 (1988).

Defendants contend that Jones' Florida claims require an interpretation of the CBA. As set forth below, a review of the claims shows that Defendants' arguments on this issue are without merit.

### B.     Allegations Related to All Claims

Jones alleges that he is the sole owner of Gulf Coast Rebar, Inc. Defendant Regional District Council is the governing body of the Reinforcing Ironworkers Local Unions - 846 and 847. Defendant Daniel Parker is President of the Regional District Council. Prior to founding Gulf Coast, Jones was employed by Davis Rebar. During his employment at Davis Rebar, Jones was mentored by Roger Struble, the Vice President/Operations Manager.

Shortly after Jones founded Gulf Coast, Struble and Defendant Parker encouraged Jones to apply for certification as a Disadvantaged Business Entity ("DBE") through Florida's Unified Certification Program because Jones is Hispanic, owned his own company, and could use the DBE certificate to secure contracts that non-minority owned businesses, like Davis Rebar, were unable to procure.

In 2009, Jones applied for the DBE certificate and successfully received the certification for Gulf Coast. As a DBE, Gulf Coast received many benefits unavailable to non-minority owned businesses.

In March 2009, Jones met with Parker and other Davis Rebar employees at Davis Rebar's office. At this meeting, Jones was encouraged to join the Union and was asked to sign the Reinforcing Ironworkers Local 846 Collective Bargaining Agreement (the "CBA"). Parker wanted Jones to sign the CBA so that the Union and Davis Rebar could take advantage of Gulf Coast's DBE status. Jones alleges that he was pressured and threatened to sign the CBA; if he did not sign it, he was told that he would be blacklisted and subjected to financial ruin and physical harm. Jones reluctantly signed the CBA.

Subsequently, Jones attempted to invalidate the CBA as a result of the coercion he experienced. Jones took various legal actions to invalidate the CBA. In response, Parker, on behalf of the Regional District Council, hatched a plan to falsely challenge Gulf Coast's DBE certification with the state of Florida. Defendants conspired to have the Florida Department of Transportation ("FDOT") remove Gulf Coast's DBE status. In the complaint filed with the FDOT, Defendants claimed that Jones was not Hispanic and therefore not a minority business owner. After investigation, the FDOT determined that there was no reasonable cause to believe that Gulf Coast's DBE's status should change.

Defendants continued their efforts to harass Jones; they filed a similar claim with the Federal Highway Administration ("FHWA") and argued that Jones did not control the business of Gulf Coast. This complaint was also unsuccessful. Around this time, the Union also sued Gulf Coast in Oregon, seeking relief under the CBA.

Jones alleges that he suffered damages as a result of Defendants' unlawful conduct.

**C.     Tortious Interference with Advantageous Business Relations**

The elements of a claim for tortious interference with a business relationship under Florida law are: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *See Networkip, LLC v. Spread Enters., Inc.,* 922 So. 2d 355, 357-58 (Fla. 3d DCA 2006). Jones alleges that Defendants willfully and maliciously filed knowingly false claims with both the Florida DBE office and the FHWA office regarding Jones and his

business, including but not limited to claims that Jones was a non-minority and that Jones did not control the business of Gulf Coast.  In doing so, Defendants intentionally interfered with Jones' existing and prospective business relationships in order to harm Jones.  Defendants knew about Jones' business relationships.  Defendants' complaints about Jones and Gulf Coast that caused two separate government investigations led to the loss of business between certain general contractors and Gulf Coast.  Defendants' interference with the business relationships between Jones and the general contractors was intentional and unjustified.

Jones' allegations, as stated herein, do not relate to the CBA.  Jones' claim will not require interpretation of the terms of the CBA between Jones and the Union.  This claim turns on questions of fact, wholly independent of the CBA.  Indeed, in the amended complaint, Jones does not invoke any portions of the CBA that would affect the existence of Jones' business relationships.  Simply put, Defendant' conduct can be judged without reference to the CBA.  Thus, section 301 does not preempt the tortious interference with advantageous business relations claim.

### D. Defamation

To establish a Florida defamation claim, a plaintiff must prove: (1) the defendant published a statement; (2) the statement is false; (3) the statement is defamatory; (4) the defendant acted at least negligently in publishing the statement; and (5) resulting damages. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

Jones alleges that Defendants published false statements related to Jones' ethnicity, specifically, that Jones was not Hispanic, in their complaints to the Florida DBE Office,

FHWA, and FDOT. Like the tortious interference claim, Jones' defamation claim turns on the facts at issue; they do not require an interpretation of the CBA. As such, section 301 does not preempt the defamation claim.

### E.     Civil Conspiracy

The elements of civil conspiracy under Florida law are: "(1) an agreement between two or more parties (2) to do an unlawful act by unlawful means (3) the committing of an overt act in pursuance of the conspiracy and (4) damage to the plaintiff as a result of the act." *Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, 590 F. Supp. 2d 1364, 1368 (M.D. Fla. 2008) (citing *Walters v. Blankenship,* 931 So.2d 137, 140 (Fla. 5th DCA 2006)).

The crux of the civil conspiracy claims is that Defendants conspired against Jones to file frivolous complaints against Jones that baselessly challenged Gulf Coast's DBE certification. Jones alleges that the sole motivation for filing these frivolous complaints was to cause damage to Jones, arising out of Defendants' discriminatory animus toward Jones due to his Hispanic ethnicity and Gulf Coast's certification as a DBE. Defendants had a malicious intent to financially ruin Jones and to remove Gulf Coast from the Florida rebar market. These allegations do not relate to the CBA. Accordingly, this claim is not preempted under section 301.

### F.     Intentional Infliction of Emotional Distress

In order to state a cause of action for intentional infliction of emotional distress under Florida law, a plaintiff must demonstrate that: 1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's

conduct caused plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe. *See Johnson v. Thigpen,* 788 So. 2d 410, 412 (Fla. 1st DCA 2001).

Jones alleges that Defendants' actions of challenging Gulf Coast's certification as a DBE were intentional, malicious, and outrageous, and were done solely for the purpose of causing Jones humiliation, mental anguish, and emotional and physical distress. Like the other claims, this claim does not relate to the CBA. Accordingly, this claim is not preempted under section 301.

## II.     Section 303 Preemption As Basis For Removal

Defendants contend that Jones' lawsuit is also subject to removal under section 303 of the LMRA because Jones' claims allege secondary activity preempted by section 303. The Court disagrees.

Section 303 provides a private right of action for conduct that violates section 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4). Section 8(b)(4) defines an unfair labor practice in this particular context as follows: "It shall be an unfair labor practice for a labor organization ... (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is ... (B) forcing or requiring any person ... to cease doing business with any other person." Section 8(b)(4) prohibits labor organizations from using threats, coercion, or restraint to interfere with the business relationships of employers engaged in commerce for the purpose of causing the employer to cease doing business with any other person. Such conduct has been labeled a "secondary

boycott" or "secondary picketing." *See NLRB v. Retain Store Employees Union,* 447 U .S. 607, 612 (1980) (discussing same).

Jones' amended complaint does not relate to a "secondary boycott" because there are no allegations of Defendants acting threatening against anyone other than Jones. In other words, the crux of Jones' claims is that Defendants filed frivolous complaints with Florida state agencies challenging Gulf Coast's DBE status. As Jones points out in his motion to remand, there are no allegations that Defendants threatened, coerced, or restrained any person engaged in commerce with Jones or Gulf Coast for the purpose of causing that person to cease doing business with Gulf Coast. Accordingly, Jones' amended complaint is not preempted under section 303.

## **CONCLUSION**

The removal of Jones' state-court action was improper. As explained, herein, preemption under sections 301 and 303 of the LMRA does not apply. Accordingly, this Court does not have jurisdiction and this action must be remanded.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion to Remand (Dkt. 12) is granted for the reasons stated herein. The Court denies Plaintiff's request for attorney's fees and costs.

2. The Clerk of Court is directed to remand this action to the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, and provide that court with a copy of this Order.

3. Defendants' Motion to Dismiss (Dkt. 7) is terminated as moot.

    4.    The Clerk of Court is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 6, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2014\14-cv-3080.mt remand grant 12 (LMRA preemption).frm